UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

YASMANY YUNIEL ALVAREZ-JAIME,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:26-cv-862

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1). For the following reasons, the Court will deny Petitioner's petition.

## **BACKGROUND**

Petitioner is a native and citizen of Cuba. (Pet., ECF No. 1, PageID.6; Notice to Appear (NTA), ECF No. 4-1, PageID.22.) On September 22, 2006, Petitioner entered the United States as a parolee via the Diversity Visa Program for Cuban Nationals. (Pet., ECF No. 1, PageID.7; NTA, ECF No. 4-1, PageID.22.) On June 27, 2008, Petitioner was granted Lawful Permanent Resident Status. (Pet., ECF No. 1, PageID.7.) However, on April 20, 2011, the Department of Homeland Security (DHS) issued Petitioner an NTA, charging Petitioner with removability under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA) because Petitioner had been twice convicted of crimes involving moral turpitude. (NTA, ECF No. 4-1, PageID.22.)

ICE detained Petitioner on April 30, 2011. (Notice of Custody Determination, ECF No. 4-2, PageID.24.) On September 22, 2011, an immigration judge ordered Petitioner removed to Cuba. (Removal Order, ECF No. 4-3, PageID.26.) Petitioner was not immediately removed. Instead, on December 21, 2011, DHS released Petitioner from detention on an order of supervision. (Pet., ECF No. 1, PageID.7; Resp., ECF No. 4, PageID.17.) Petitioner has remained in the United States since that time.

On March 4, 2026, ICE agents arrested Petitioner when Petitioner appeared for his scheduled ICE check-in. (*Id.*, PageID.8). On the date of his arrest, ICE conducted an informal interview with Petitioner that gave him the chance to respond to DHS's decision to revoke supervision. (ECF NO. 10-3, PageID.129). Petitioner did not provide a response. (*Id.*). On March 7, 2026, DHS notified Petitioner that it intended to remove him to Mexico. (ECF No. 10-2, PageID.127). A couple days later, on March 9, 2026, ICE issued Petitioner a formal Notice of Revocation of Release. (ECF No. 10-1, PageID.124). The Notice solidified that DHS revoked Petitioner's supervision under 8 C.F.R. § 241.13(j) due to a change in circumstances such that there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.*). More particularly, ICE stated that it was attempting to procure travel documents to effectuate Petitioner's removal to Mexico. (*Id.*).

Petitioner filed this writ of habeas corpus on March 17, 2026. (ECF No. 1). The next day, on March 18, Respondents transferred Petitioner to Louisiana in preparation for his removal to Mexico. (ECF No. 10, PageID.117; ECF No. 9, PageID.93). Both parties appear to agree that the Respondents tried to remove Petitioner to Mexico. But, although the facts of this attempt remain unclear, both parties also agree that the Respondents could not effectuate Petitioner's removal because Petitioner "refused to exit the bus" that transported him to the southern border. (ECF No.

10, PageID.117; ECF No. 9, PageID.94). According to Respondents, Petitioner returned to North Lake on April 8, 2026. (*Id.*).

Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.11).[1] In an order entered on March 18, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3). Respondents filed their response on March 23, 2026, (ECF No. 4), and Petitioner filed his reply on March 24, 2026. (ECF No. 5). On April 2, 2026, the Court ordered the parties to submit supplemental briefing to address both legal and factual issues that the parties initial briefing did not consider. (ECF No. 8). Both parties filed their supplemental responses on April 16, 2026). (ECF Nos. 9, 10).

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

---

[1] In addition to filing the § 2241 petition, Petitioner also filed an emergency motion to return Petitioner to this Court's jurisdiction and to stay Petitioner's order of deportation (ECF No. 5). The Court denied Petitioner's emergency motion. (ECF No. 8).

**DISCUSSION**

The parties agree that Petitioner is subject to a final order of removal.  Petitioner contends that Respondents have violated Petitioner's right to due process by re-detaining him without notice and a hearing to determine whether re-detention is justified. Respondents, however, contends that Petitioner is properly detained under 8 U.S.C. § 1231(a), following Petitioner's final order of removal entered on September 22, 2011.

Although Petitioner contends that the Respondents did not properly revoke Petitioner's supervised release, the Respondents' uncontroverted evidence shows otherwise. Under Section 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A). If, however, the alien is not removed during the removal period, immigration officials are generally instructed to release the alien "to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

As required by that provision, the government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations also address the revocation of such noncitizens' release. In particular, under Section 241.13—which governs the detention of noncitizens under a final order of removal where "there is no significant likelihood of removal in the reasonably foreseeable future"—release may be revoked if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen]

may be removed in the reasonably foreseeable future." § 241.13(i)(2).[2] Further under § 241.13, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i).[3]

Here, all the parties agree that, under § 1231(a)(3), Petitioner was released from detention with an order of supervision after his final removal order in 2011. However, contrary to the Petitioner's assertions, the Respondents' uncontroverted evidence indicates that Respondents properly revoked his release under those procedures. The evidence shows that DHS officials determined, under 8 C.F.R. § 241.13, that because ICE began seeking travel documents to Mexico, a third country, Petitioner's circumstances were changed such that "there is a significant likelihood" that Petitioner "would be removed in the reasonably foreseeable future." (ECF No. 10-1, PageID.124). Then, in line with 241.13(i), DHS notified Petitioner of these determinations and findings and informed him of its intent to remove him to Mexico. (*Id.*; ECF No. 10-2, PageID.127). And, as required by 241.13(i), ICE conducted an informal interview with Petitioner shortly after detaining him to give him the chance to respond to DHS's decision to revoke supervision. (ECF NO. 10-3, PageID.129). Plaintiff does not provide any evidence indicating that DHS did not follow

---

[2] The other regulation—Section 241.4—generally governs the continued detention of noncitizens under a final order of removal. In particular, Section 241.4(l)(2) provides that "[r]elease may be revoked in the exercise of discretion when, in the opinion of the revoking official. . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or . . . any other circumstance, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4.

[3] These regulatory procedures require exactly the kind of notice and opportunity to respond that the Petitioner claims due process requires before revoking supervised release.

the applicable regulatory procedures. As such, the record shows that DHS's decision to re-detain Petitioner was procedurally proper, and for that reason Petitioner's claim for relief is unwarranted.

With that factual clarification in mind, Petitioner's post-removal detention is lawful under 8 U.S.C. § 1231(a)(6) and *Zadvydas.* Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title . . . may be detained beyond the removal period." In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699.  Therefore, the Court concluded that for post-removal-order detention to be authorized by the statute, the removal itself must be reasonably foreseeable. *Id.*  The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention became constitutionally impermissible. *Id.*  Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701.  Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.*  Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable.  *See Abdalla v. Johnson*, No.

16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has not provided any evidence showing that his removal is not significantly likely to occur soon. In fact, both parties agree that Petitioner has only been detained since March 4, 2026. As such, Petitioner has remained in detention for roughly 1-and-a-half months—which is well within *Zavydas*'s "presumptively reasonable period of detention." 533 U.S. at 701. Moreover, at the time of his detention, DHS indicated that it was seeking travel documents to effectuate Petitioner's removal to Mexico. (ECF No. 10-1, PageID.124). And, most persuasively, both parties recognize that DHS already attempted to remove Petitioner to Mexico.[4] (ECF No. 10, PageID.117). Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution." *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded). To the contrary, DHS is actively seeking to remove Petitioner from the United States.

---

[4] Although the record is unclear on this issue, the parties appear to agree the government did not effectuate Petitioner's removal because he refused to exit the vehicle that transported him to the southern border. (*See* ECF No. 10, PageID.117; ECF No. 9, PageID.94). Petitioner's bizarre removal story does not affect the Court's *Zavydas* analysis, so the Court need not flesh out factual details at this point. If, however, Defendant's current detention continues long enough to raise a potential *Zavydas* issue, the details may become important. For example, when evaluating the whether the length of detention is reasonable under *Zavydas*, some courts consider whether the removal delay is "due to actions taken by the petitioner or the government." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). If Petitioner did, in fact, thwart DHS's removal attempt by refusing to exit the vehicle that took him to the border, that suggests that any removal delay that he currently faces would be due to his own actions rather than the government's, which would weigh against relief.

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit.  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701.  Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation. Petitioner's one-and-a-half-month detention, while the government actively pursues removal, is not unreasonable. At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be **denied without prejudice**. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:   April 23, 2026                         /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                United States District Judge

8